**THE FONDA GROUP, INC., Plaintiff,**

v.

**NEPTUNE PAPER ENTERPRISES, INC., and Neptune Paper Products, Inc., Defendants.**

**No. 2:99–CV–92.**

United States District Court, D. Vermont.

Dec. 14, 2000.

Michael B. Rosenberg, Burak, Anderson & Melloni, PLC, Burlington, VT, for The Fonda Group, Inc., plaintiff.

Shapleigh Smith, Jr., Dinse, Knapp & McAndrew, P.C., Burlington, VT, for Neptune Paper Enterprises, Inc., Neptune Paper Products, Inc., defendants.

### OPINION AND ORDER FINDINGS OF FACT AND CONCLUSIONS OF LAW

SESSIONS, District Judge.

This contract action arose when the defendants, Neptune Paper Enterprises, Inc. ("Neptune Enterprises") and Neptune Paper Products, Inc. ("Neptune Products"), failed to make a timely payment to the plaintiff, The Fonda Group, Inc. ("Fonda"), on a note and guaranty in which the defendants agreed to pay Fonda $225,000 in quarterly installments of $13,760.20. The note and guaranty had been issued in connection with the defendants' purchase of paper can manufacturing equipment from Fonda, which had to decided to liquidate the paper can manufacturing portion of its business.

The defendants claim that they were not obligated to make any further payments on the note and guaranty because Fonda violated a non-compete clause in the purchase and sale agreement by liquidating approximately $3,000 of previously manufactured paper cans. Fonda denies that it violated the non-compete clause by liquidating the cans, or, in the alternative, argues it committed a technical, non-material violation which does not entitle the defendants to stop making payments on the note.

The Court held a one-day bench trial on November 28, 2000. Based upon the testimony of witnesses, all of the evidence submitted, and arguments of counsel, the Court makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. In sum, the Court finds that Fonda did not violate the non-compete clause and that the defendants were therefore required to make payments on the note to Fonda. Alternatively, even if Fonda technically violated the non-compete clause, such a violation was insubstantial and did not warrant rescission of the contract. Accordingly, judgement is entered for Fonda in the amount of $221,636, plus costs and attorneys' fees (to be determined in a separate hearing or hearings).

## I. Findings of Fact

1. In 1996, Fonda decided that it was no longer productive to continue operation of its paper can business and, as a result of this decision, terminated its production of paper cans on January 31, 1997.

2. After January 31, 1997, Fonda stopped using the machines that it had used to manufacture paper cans. It did, however, make use of a machine that punched holes in already-constructed cans during the first week of February, 1997, but not thereafter.

3. Thus, other than punching holes in some cans in the first week of February, Fonda did not engage in the manufacture of any paper cans from January 31, 1997, until the surrender of the paper can manufacturing equipment to the defendants.

4. Fonda sold between $3,100 and $3,200 worth of paper cans that were already in inventory after August 29, 1997.

5. On April 17, 1997, Fonda and Neptune Products entered into an agreement, subject to Neptune's ability to obtain financing, under which Neptune Products was to purchase Fonda's paper can manufacturing equipment for $250,000. Under this agreement, Neptune was to purchase all of Fonda's remaining inventory of paper cans.

6. Because Neptune Products was unable to obtain financing to complete the April 17, 1997 agreement, the agreement was revised on August 29, 1997. Under the August 29, 1997 agreement, Neptune Enterprises purchased Fonda's paper can manufacturing equipment for $250,000, with a down payment of $25,000. Fonda executed a loan to Neptune Enterprises for the remaining $225,000. The August 29 agreement—unlike the April 17 agreement—did not provide for the purchase of Fonda's remaining paper can inventory.

7. In return for the loan, Neptune Enterprises executed a promissory note in favor of Fonda in the principal amount of $225,000 and a security agreement in favor of Fonda covering the collateral.

8. The note obligated Neptune Enterprises to make quarterly payments to Fonda in the amount of $13,760.26. The note provided that if payment was not made within five business days after receipt of written notice of default, Fonda could accelerate the note.

9. Also on August 29, 1997, Neptune Products executed a guaranty of the obligations of Neptune Enterprises under the note and the agreement.

10. The closing of the August 29, 1997, transaction took place on August 29, 1997, as contemplated by the agreement.

11. The machinery transferred in this transaction was used by Fonda to produce 32,939 cases of paper cans in 1994, which it sold for approximately $735,000. In 1995, Fonda used the machinery to produce 33,076 cases of paper cans which sold for about $736,000. In 1996, Fonda used the equipment to manufacture 27,232 cases of paper cans, which it sold for about $658,000.

12. If the machinery was used on a triple-shift basis, it could produce as many as 504,000 cases of paper cans per year, which would be worth approximately $11,500,000.

13. On September 8, 1998, Neptune Enterprises instituted a lawsuit against Fonda for breach of the agreement in which in sought a temporary restraining order. The parties entered into an agreement on November 5, 1998 in which the case was dismissed, there was a full settlement and a release executed by the parties.

14. On November 12, 1998, the defendants and Fonda filed a Stipulation of Dismissal, dismissing the prior litigation with prejudice. All claims that the defendants may have had against Fonda were extinguished at that point. Thus, pursuant to the note and the settlement, Neptune Enterprises was obligated to continue making regular quarterly payments to Fonda of $13,760.26.

15. One such payment was due on March 1, 1999. The parties have not disputed that Neptune Enterprises failed to make this payment in a timely fashion.

16. On March 9, 1999, Fonda delivered a notice of default to Neptune Enterprises demanding payment (Pl.'s Ex. 11).

17. Neptune Enterprises failed to make the required payment within five business days from the notice of default, as required by the note.

18. On March 23, 1999, Fonda notified Neptune that as a result of its failure to pay the most recent quarterly payment and its failure to cure the default within five days of receipt of written notice of the default, Fonda had accelerated Neptune's obligations.

19. Both Fonda's notification of default and its notification of the acceleration were sent by Fonda to Neptune via fax and regular mail.

20. Neptune Enterprises received both notifications. After receipt, Mr. Lewison, who was President and CEO of Neptune Enterprises at the time, spoke with Mr. Friedman, General Counsel for Fonda and a witness in this case, to try to settle the matter. From those conversations, it was clear that Mr. Lewison learned of the default and acceleration from Fonda's written notifications, as required by the agreement.

21. The note, the security agreement, and the guaranty require the defendants to pay all reasonable attorneys' fees and collection costs if they default on their obligations.

22. Since their default, the defendants have not paid Fonda any of the money owed by them pursuant to the agreement.

23. The amount of money owed at this point, including principal and interest accrued through November 28, 2000, is $221,636.

24. Any conclusion of law deemed as or properly constituting a finding of fact is hereby adopted as a finding of fact.

## II. Conclusions of Law

■ The August 29, 1997 agreement between Fonda and the defendants did not require Fonda to turn over all of its remaining inventory to Neptune; the remaining inventory remained in possession of Fonda and Fonda's use of it was unrestricted by the agreement between the parties. Thus, Fonda did not violate the non-compete clause in the contract.

■ Further, even if Fonda did violate the non-compete clause, that violation was not material enough to justify Neptune's nonpayment under the contract. There is

no evidence that Fonda manufactured any paper cans in violation of the agreement between Fonda and Neptune. The only evidence that Neptune offers in support of the notion that Fonda violated the non-compete clauses is evidence that Fonda sold a very small quantity of existing inventory. The Court finds that Fonda's sale of its existing inventory did not violate the non-compete clause, but even if it did, the fact that Fonda sold it for only $3,200 while the machinery it contracted to sell to Neptune Enterprises was capable of producing paper cans worth as much as $11 million per year, makes the violation insufficiently material to justify Neptune's non-payment under the contract.

In sum, Neptune had an obligation to pay under the contract. Neptune failed to make one of its quarterly payments, at which point Fonda was entitled to accelerate the note, which it did. Fonda is therefore entitled to judgment in the full amount required under the contract.

### III. Conclusion

Wherefore, the Court orders judgment in favor of Fonda in the amount of $221,636.

The Court further orders that the defendants are required to pay all reasonable costs and attorneys' fees. A separate hearing (or hearings) will be arranged to determine the amounts that the defendants must pay Fonda toward such costs.

Any obligations that the defendants have under this judgment are subject to the accrual of interest from November 28, 2000 until the judgment is paid.